Good morning, Your Honor. Smith Police Court. My name is Manuel Rios and I represent the petitioner Mr. Avalos. This is a petition for review of the Board of Immigration Appeals denial of Mr. Avalos' motion to reopen his 1993 deportation order. Oh, excuse me. If I could reserve two minutes for rebuttal. All right. Watch the clock and I'll also try to help you. Mr. Avalos alleged that his 1993 deportation order constituted a gross miscarriage of justice in two aspects, that governmental misconduct in obscuring the fact that he had legal resident status at the time of his hearing that was obscured not only from Mr. Avalos but also from the immigration judge and the fact that he was not deportable under the law at the time. The board found that because the law was unclear at the time that Mr. Avalos was not deported contrary to law and that his collateral attack is precluded because of his failure to appeal the 93 deportation order and his concessions. Why was he not deportable? He was accused of entering the United States without inspection and having been convicted of a crime of moral turpitude. And we know that he had been convicted of the felony for which he had spent some time in prison. That's correct, Your Honor. So the first, when a court looks at whether or not the propriety of a deportation order of the time, they look at the law in place at the time, right? And we're talking about a California burglary conviction. So in this circuit, under the Ninth Circuit law, the law in place at the time includes subsequent interpretations of the law. So we now know, applying subsequent interpretations of the law, that California burglary statute under 459 that Mr. Avalos was convicted of is indivisible and is overbroad as applied to crimes involving moral turpitude. So California burglary conviction can never be a crime involving moral turpitude. But at the time, it was. That was before the Ninth Circuit said it wasn't. This is correct, Your Honor. Okay. And that's the first argument that we have is that— But we have to get to jurisdiction first under Bonilla. So I take it your argument is there's a legal or constitutional error with respect to the order? Legal errors. A legal error. And there's legal errors in regards to the actual decision. And the first legal error is that they applied the wrong legal standard, and that is that they didn't apply the subsequent interpretations. Even under the law in place at the time as interpreted, and that's a standard that the board used, the law as interpreted as the time as opposed to the law at the time, that Mr. Avalos was not inadmissible or deportable based on being inadmissible. And, Judge Bolton, I believe that the question was— I believe that the board determined not at entry but at the time of adjustment of status. So what the court can review is basically what the board decided. And the board decided that he was charged for being inadmissible at the time of adjustment of status. And this is really kind of the rub in this case, is that this case involves a special type of adjustment of status, and it's the special agricultural worker adjustment of status. And it's not like any other type of adjustment of status. So what happens is that the applicant applies and then becomes a temporary legal permanent resident, and then on a fixed schedule as a matter of law automatically becomes a legal permanent resident. So the issue is, was Mr. Avalos inadmissible at the time of adjustment of status to legal permanent resident, from temporary legal permanent resident? That seems to be— I have a few questions about that. At the time they arrest him, the A number pops up, correct? That's on the document. That is correct, Your Honor. And in your view, what is the significance of that classification at the time? That Mr. Avalos was a SAW applicant, at least. Just like we know that by the 9 million series number, they were designed to be readily identifiable. So if someone has a 9-0 or a 0-9 number, then that shows that he had applied or has benefits underneath the special agricultural worker program. So by the government assigning him a new A number, the 7-5 A number, that served to conceal the fact that Mr. Avalos actually had status at that time. So because there is notice, because there is at least the 900 or the 9,000 series that he's a SAW participant in some way, what is the obligation of the arresting authority at that time or the processing authority? Well, Your Honor, according to the I-213, the Border Patrol agents who arrested him, they knew that he had legal status. It said he was admitted as a TS-2, which is a temporary resident under the SAW program. So they knew that he had legal status. However, the I-213, which is basically the arrest report, also says that he makes no claim to legal status. So Mr. Avalos didn't know he had legal status. The government knew he had legal status. The government did not correct the fact that it did not tell him that he had legal status. And, in fact, the— He knew he had applied for the permit, though. Well, I believe that they said that he has TS-2 status. So he, under the central index system, it shows that he had status, that he was granted temporary status. And that means he had temporary legal residence, at least. Now, as a matter of law, I mean, as a matter on a fixed schedule, he would have at that time automatically adjusted to legal permanent residence. Would they have necessarily known that he had already adjusted? Well, at least the only time that— There's two adjustments in a SAW adjustment. The first one is to the temporary, and then the second one happens automatically. No admissibility needs to be shown. So they should have known that, for sure, just by virtue of having that number and seeing the central index system as referred to in 213. But why does it matter? An LPR is removable if they commit a felony, at least at that time, that is a crime of moral turpitude. So whether his status was temporary or legal permanent resident, he was charged with coming into the United States not through a port of entry, without being inspected, and having previously convicted of a crime of moral turpitude. That, in 1993, was a basis for removal that he admitted was a basis for removal, and he was removed. So I'm having trouble seeing why it matters that he had LPR status at the time, because it wouldn't have affected his removability. It would have affected his relief availability, for sure. That's my question. But I do believe that if we look at the Board's decision, the Board didn't determine that he was inadmissible at the time of entry, but rather inadmissible at the time of adjustment of status, which is different. So the Board's decision doesn't contemplate that he entered in 1992, which was contested by us, by Mr. Avalos underneath, because of all the discrepancies inherent in I-213 and the other documents that surround it. So the Board's decision in this matter contemplates only inadmissible at the time of adjustment of status and not at the time of entry. So say we agree with you that the Board made this error, this legal error about the SAW status. I'm wondering if there's a separate legal error that might have also happened, which is I'm a little confused why the Board is talking about gross miscarriage of justice rather than just exceptional circumstances for reopening. I thought the standard for sua sponte reopening was exceptional circumstances, not gross miscarriage of justice. So I don't know why everyone's talking about gross miscarriage of justice. Well, Your Honor, I'm getting a little out of my time, but I can definitely answer this. I believe that we asserted jurisdiction under two separate bases, one gross miscarriage of justice and under sua sponte. And we allege that there are – But isn't what you were seeking sua sponte reopening? Well, sua sponte reopening is discretionary, whereas we allege that if we find – if we can establish a gross miscarriage of justice, it's a mandatory. The Court needs to and the Board must correct a gross miscarriage of justice if it comes up. The only cases you have for that are really old ones, right, before the current immigration regime for how reopening works? That is true, Your Honor. That is true. If there's a remand, does it matter which basis? No, it shouldn't matter, Your Honor. But if we're remanding for reconsideration under BONEA, if we're remanding for reconsideration of sua sponte reopening, the standard is exceptional circumstances, not gross miscarriage, right? Right. But they merge. You know, a lot of the case law shows that exceptional circumstances and gross miscarriage of justice, you know, can be essentially the same thing. I mean, they may be the same thing. I don't know. And I think in this case it rises to the level – excuse me, Your Honor – that so many improprieties or just kind of irregularities in the record seem to indicate that this is something that has risen to that type of a level. And I'd like to reserve the last 10 seconds for rebuttal. I'll give you some time to rebuttal. All right. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court, Jonathan Ross for the Attorney General. To the extent that the Court has jurisdiction over a sua sponte motion to reopen, the Court should reject Mr. Avalos' gross miscarriage of justice claim, particularly where at the time of his deportation hearing in 1993, the immigration judge decided his case in accordance with the law as it existed at the time. Here there's no gross miscarriage of justice where Mr. Avalos conceded the charge of removability in the factual allegations alleged by INS. He failed to – in evaluating sua sponte reopening made a legal error. We're not trying to figure out on our own whether there was a gross miscarriage of justice, are we? Your Honor, you're correct in saying that here in the context of a sua sponte motion to reopen, the Court's jurisdiction would be limited. That's correct, yes. But if there's a legal error – so like you're talking about this gross miscarriage argument, but it seems like our question is just did they make a legal error. And I'm not sure how we could say they didn't make a legal error under Perez Enriquez. That's correct, Your Honor. The government contends that it's more of a factual dispute at this point as to when he was admitted. The board said that at the time the deportation order was appropriate under the law, or I can't remember the exact words, but something like that. Correct, yes. And doesn't Perez Enriquez tell us that's not so? I'm sorry? So Perez Enriquez is interpreting the statute and says it's not so. So I'm not sure – I mean, I know it happened later, but it's telling us what the law was, and so I don't think the board is right that it was the deportation order was appropriate at the time. The deportation order was correct at the time because in 1993, the criminal burglary charge that Mr. Valas was convicted under was a CIMT. And because of his entry in 1992, he was – essentially he was an EWI. He entered without inspection. So regardless of whether or not he had lawful status in this country, his act of entering into the country and committing a crime, which Judge Bolton, I don't necessarily have on the record that it was a felony at that point. He was subsequently convicted of a felony, but just to correct the record, it was a first-degree burglary offense, a serious burglary offense. However, the law as it existed at the time, under this case – the case law of this circuit clearly fell into the category of that being a CIMT and him clearly being excludable at the time of his entry in 1992. But what is the timing of his temporary status under SAW? The timing of his temporary status under SAW, he received temporary status in approximately 1990, which subsequently two years later automatically became lawful permanent resident status. And you're saying that that's just irrelevant? It's irrelevant in this situation, however, because he – the charge of removability was completely – it was properly charged in that he entered without inspection and he committed a crime involving moral turpitude. So regardless of his lawful permanent residency, he was an EWI. He entered without inspection and had committed a crime involving moral turpitude. At the time, INS lodged the order to show cause. And at that time, would he have had any opportunity under the laws that existed to seek relief from deportation? Absolutely not. The form of relief that Mr. Avalos contemplates would be relief under INA 212C, which had a requisite period of seven years of continuous physical presence in this country as a lawful permanent resident. The service of the order to show cause cut that off so that he could not have accrued the seven years required. And he's waived any type of other relief. He also contemplates a 212H waiver. However, that hasn't been preserved for argument. So really, there was no – Let's go back to – and there seems to be some dispute over the entry date. If you look at Exhibit or the excerpt at 128, which both parties point us to, there's a 1988 date and then there's a 1990 date. I'm sorry, you said at 128? Yes. Yes, Your Honor. What is the 1988 date? So the 1988 date would be his original application for temporary status under SAW. Right. Which seems that it was subsequently granted in 1990. What's the key date of 12-30-1988? The key date is going to be the date of his original application for – So it's 10-17-1988. Then there's a 12-30-1988. So what happened in 1988 in terms of his status? Your Honor, unfortunately, I'd be happy to research this issue further and submit it in a 28-J. However, the months, the several-month difference between those two dates in 1988, I don't think are material in this exact situation where, generally speaking, in 1988, that is the period that we look to for his application. Subsequently, in 1990, when he applies for SAW, the consideration for when he committed the CIMT, the relevant period for the law as it existed at the time, was that 1992 entry into the United States. But as of 1990, he's been granted status? In 1990, he only had temporary status. And it's the time of that application that – Right. But you're saying automatically it's two years he gets – In 1992. And the time of the crime is? And the time of the crime was 1990. Right. And at that time, but at the time he's arrested, what does it mean on his immigration forms that he's in the 9000 series? It means that they should stop and see – They give him a whole new number, right? They look at a whole new number and they totally ignore, unscrambling, what the seasonal agricultural worker status is, correct? He does get another number. And there's any number of reasons why another number would be generated. But why isn't the existing 9000 series significant? For two reasons. And first, it's hard to know exactly why, as I said, if there's any reason that someone could be given another A number. But ultimately, whether or not he was given an A number, whether or not he had status at that point, is immaterial where subsequently he reentered the country unlawfully. He didn't have a lawful entry to even – Even if he had LPR status, he would have to effectuate a lawful entry into the country, which he did not do. Rather, he did the opposite. He passed back and forth over the United States-Mexico border multiple times, admittedly, without ever seeking formal admission. That, paired with the CIMT conviction, in and of itself, makes the order to show cause valid on its face, not to even include other charges of removability that are connected with that CIMT conviction. So what is the relevant reentry date? The relevant reentry date is as alleged. It's the 1990 date – excuse me, the 1992 date when he enters the country without lawful inspection. That's absolutely dispositive in this case. Do you understand why the board is talking about gross miscarriage instead of exceptional circumstances? My understanding of the board decision is that it tries to address – it tries to address more of the – explain how the law existed at the time. Because that really is pivotal in the situation. In terms of the court's jurisdiction, the immigration judge did not reach that. However, something such as jurisdiction, I think, can be evaluated on an ongoing basis. And so the government's position is that on a sui sponte motion to reopen, regardless of gross miscarriage of justice, regardless of other factors, in a situation such as this, there's no jurisdiction. But if we were to determine that the boards misunderstood the import of our Paris case, because it's actually saying, here's what the law was all along, then wouldn't we remand for the board to take a look at this? I mean, what counsel's argument, of course, is there is an argument for gross miscarriage of justice, but there's also the board not dealing with the regular sui sponte Bonilla reopening standard. So wouldn't we just remand and let the board sort that all out? Understood, Your Honor. And if I can address your question, it looks like my time will be up soon. However, the boards, to the extent that the board is focusing on the Perez Enriquez question, which is do we look for, when do we interpret this time of deportability, or what is the relevant inquiry here? What Perez Enriquez is saying is it's establishing correctly that the law as it existed in 1993, was that that case was before the board's case law and before the Ninth Circuit case law, it was the evaluation period of what time is relevant in determining someone's removability. That case is cited just to focus in on the fact that at the time, it was one thing. And although that changed in 2006, the law as it existed at the time was very clearly that that crime was a CIMT and that the relevant period for whether or not someone was admissible was their last entry into the United States or the date of their application. I guess I thought where the board went wrong was to suggest there's some kind of really lack of legal clarity when if you trace the decision, the court said, no, there wasn't any lack of clarity. That to me was sort of a misunderstanding by the board. Whether it ultimately matters is kind of seems to me to be another question, but I don't know because if we determine that they were misunderstanding the state of the law and that somehow is infused in their decision, we just can't. It's not like we can go into Novo and say, well, actually, you might have been misunderstanding, but your decision is right because of X. I mean, because you agree that we can't on our own. Yes, Your Honor. And that paragraph, when I was reading it as well, it made, it perked my attention. However, the purpose of that paragraph is not to suggest that there was some legal error committed. In fact, really, I think the reason the board brings that up is to just really drive the point home in saying that at the time this was, this was the law. And recognizing that although it's changed subsequently, that has no bearing on the current removal proceedings that were valid at the time were in accord with the law. So again, just if I may conclude. We've got your point in mind then. Thank you very much. Thank you very much. Thank you, Your Honors. Would you please put a minute for rebuttal? Thank you, Your Honors. The government's argument is really based on a factual, a factual finding that was not actually found by the Board of Immigration Appeals. The Board of Immigration Appeals in their decision did not find that Mr. Avalos re-entered the United States unlawfully in 1992. That was actually contested underneath and there was no finding whatsoever. In fact, the only finding as far as, or the only statement involving, you know, the propriety of the decision because it could go either way if he, if the Board had found that he actually re-entered unlawfully. What they said was he was charged with being an alien who at the time of entry or adjustment had been convicted of a crime of moral turpitude. The actual charging document said he had re-entered without inspection. And then he says the respondent admitted the factual allegations. So why would the Board have to in this year find anything more than you were charged with coming in without inspection at the time you had a crime of moral turpitude conviction and you admitted it and therefore you were removed? Because the charge was in the disjunctive at the time of entry or the time of admission. And further on in that paragraph, the Board only addresses the legal issue as the time of admission. You know, my colleague stated that basically that this actually goes to the law about the crime involving moral turpitude. And the language of the Board's decisions talks about the SA adjustment, when do you address admissibility at the time of SA adjustment. So I don't think that this could be read in a way that would be pertinent to any type of physical entry into the United States, but rather a finding that's based on the adjustment as a matter of law. So because the charge was put in the disjunctive and we had argued underneath that the I-213 can't be reliable and there are egregious circumstances it should not bind Mr. Avalos to his concessions, this is something that we had addressed. The Board only found in this decision that what it appears to me is that they only found that he was inadmissible at the time of adjustment of status, not at entry. Thank you. Thank you. The case just argued Avalos v. Whitaker.
judges: McKeown, Friedland, Bolton